IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00160 SOM (02) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | STUART MERKEL'S EMERGENCY |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| vs. | ) | |
| | ) | |
| STUART JAMES MERKEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT STUART MERKEL'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

Defendant Stuart James Merkel has filed what he calls
an emergency compassionate release motion, arguing that he should
be released to care for his ailing mother.  The court is, of
course, extremely sympathetic, but denies the motion because
Merkel fails to show on the present record that his immediate
release is needed for his mother's care.

II.        **BACKGROUND.**

In October 2008, Merkel was sentenced to 127 months of imprisonment, 5 years of supervised release, and a $100 special assessment for possessing with intent to distribute 50 grams or more of methamphetamine. *See* ECF Nos. 75-77. In February 2015, pursuant to 18 U.S.C. § 3582(c)(2), his sentence of imprisonment was reduced to 120 months. *See* ECF No. 114.

On February 10, 2020, following his initial term of imprisonment, Merkel admitted to seven violations of supervised release conditions, occurring between September 2018 and January 2020. The violations involved his use of marijuana and methamphetamine and his failure to comply with drug testing. The court revoked his supervised release and sentenced him to 5 months of imprisonment and 55 months of supervised release. *See* ECF Nos. 125-26.

On March 13, 2023, after being released from his second term of imprisonment in this case, Merkel admitted to six violations of the conditions of his second term of supervised release, occurring between August 2000 and February 2023 and involving his use of methamphetamine and cocaine. This time, Merkel was sentenced to 7 months of imprisonment followed by no supervised release. *See* ECF Nos. 135-36. Merkel is now serving his second revocation sentence, having completed about 2 of those 7 months of imprisonment at FDC Honolulu. He has a projected release date of October 5,

2023.  *See* https://www.bop.gov/mobile/find_inmate/index.jsp (input inmate number 98025-022) (last visited May 15, 2023).

There is no dispute that Merkel's mother is very sick. The court has carefully reviewed her sealed medical records but does not detail her medical conditions in this order because she has not placed those details at issue.  Those medical records unfortunately do not allow this court to understand how much caregiving help Merkel's mother needs.  That is, the sealed medical records describe the mother's various conditions, but fail to discuss how those conditions limit her everyday life and what kind of care is needed.  Thus, for example, this court cannot tell whether the mother is mobile enough to go alone to doctor's appointments by something akin to a HandiVan, if such a service is available to her.

According to Merkel, his partner, Veronica Medeiros, and his stepfather were taking care of his mother while Merkel was in prison.  Medeiros was working during the day, meaning that she took care of the mother at night.  The stepfather helped to watch Merkel's mother during the day.  The stepfather "could only do small chores around the house" and be home to call for help. *See* ECF No. 139, PageID # 458.  Unfortunately, the stepfather passed away earlier this month.  Medeiros continues to care for Merkel's mother, who is being left alone when Medeiros is at work.  *See* ECF No. 139, PageID #s 457-59.

According to Merkel, Medeiros, who has been taking Merkel's mother to medical appointments, now has only 8 hours of leave left and has recently been placed on probation because she has missed so much work. *See* ECF No. 139, PageID # 459. No one could fail to be empathetic to her plight. Few families escape the toll of caring for ailing relatives. But the present record is too thin to justify the relief Merkel seeks.

For one thing, in seeking expedited treatment, Merkel indicates that the situation is urgent given his stepfather's death. But what did the stepfather do that Medeiros must now do? If Medeiros is leaving Merkel's mother at home alone, Medeiros is not missing more work than when the stepfather was alive, and the emergency characterization cannot rest on the stepfather's death.

Also, Medeiros has installed a security system with cameras in the home, so that Medeiros can remotely check up on the mother while Medeiros is at work. *See* ECF No. 147, PageID # 525. Medeiros is understandably concerned about trying to monitor the mother in this way, but if the mother is being left alone that suggests that she may be able to perform certain basic tasks for herself.

In addition, Merkel says no other family members can care for his mother. His sister lives in Oregon, and a brother recently moved to Washington. Nothing in the record establishes whether they would be willing to provide care for the mother if

4

she were able to move to Oregon or Washington.  If the mother needs to remain here (including for medical coverage purposes), it is not clear from the record whether either mainland sibling is willing or able to contribute funds towards the mother's care.

Another of Merkel's brothers, Michael, lives 30 to 45 minutes away from their mother.  Merkel says that Michael cannot be his mother's caretaker.  Michael has a wife and three children, *see* ECF No. 139, PageID # 459, and cannot take time off from his construction job to care for the mother because he will not get paid if he does not work.  Money is tight for his family. Also, Michael and his family live in a three-bedroom home with three or four steps that Merkel's mother would have to navigate if she moved in.  *See* ECF No. 147, PageID #s 523-24.  The record does not reflect whether any other person has been approached to provide support for the mother.

The Reply represents that there are few adult care facilities on Kauai and that the mother has applied to the two that accept Quest medical coverage.  Apparently, there are long waitlists for both.  *See id.*, PageID # 524.  Medeiros says she cannot afford in-home care for Merkel's mother.  *See id.*  The mother was previously told that she does not qualify for hospice care, as the mother is still seeking treatment for her condition. *See id.*, PageID # 525.

III.      **ANALYSIS.**

Merkel's compassionate release request is governed by

18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority

under § 3582(c)(1)(A), it must initially determine that the

defendant exhausted his administrative remedies or that 30 days

have passed since he filed an administrative compassionate relief

request.  If a defendant has satisfied the exhaustion

requirement, then the court may only exercise its discretion

after examining three considerations.  First, it must find that

extraordinary and compelling reasons warrant a sentence

reduction.  Second, it must find that such a reduction is

consistent with the Sentencing Commission's policy statements

6

(assuming there are any policy statements applicable to this motion).  Third, it must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to determine under the particular circumstances presented that the requested reduction in sentence is warranted.  *See United States v. Wright*, 42 F.4th 1063, 1070 (9th Cir. 2022)*; United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).  "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds."  *Wright*, 42 F.4th at 1070-71.

> **A.    The Administrative Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A) Has Been Satisfied (or Waived by the Government).**

Merkel submitted an administrative request to his warden, asking for compassionate release based on his mother's need for caregiver assistance.  *See* ECF No. 139-2, PageID # 465.  On or about April 19, 2023, that request was denied because Merkel had failed to submit "documentation specifying you are the only caregiver for your mother or information to support how you will financially support both family members."  *Id.*

The Government did not argue in its Opposition to the present motion that Merkel had failed to administratively exhaust his prison remedies.  The court therefore rules that the exhaustion requirement has been satisfied (or waived by the

Government).  *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (ruling that the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is a mandatory claim-processing rule that may be deemed forfeited by the Government).

**B.    This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

The Sentencing Commission has proposed guideline amendments that reflect the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions.  Those are not presently in effect.  *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  This court, however, does consider the guidance the amendments provide.

Absent congressional action, the Sentencing Commission's

proposed amendments will take effect November 1, 2023.  One of the proposed amendments recognizes that compassionate release may be warranted when a defendant's parent is incapacitated and the defendant is the only available caregiver for the parent.  *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, page 2 of 73, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (last visited May 16, 2023).

This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are currently at odds with the congressional intent behind recent statutory amendments.  *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that, at least in the absence of amendments, there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A). Nevertheless, while the Sentencing Commission's statements in the

version of USSG § 1B1.13 now in effect are not applicable policy
statements that are binding on this court, they may inform this
court's discretion.  *See United States v. Aruda*, 993 F.3d 797,
801-02 (9th Cir. 2021) (per curiam).

> ### C.   Merkel Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.

Merkel bears the burden of establishing an
extraordinary and compelling reason warranting a compassionate
reduction of his sentence.  *See United States v. Kanohokula*, 2021
WL 5411211, at *4 (D. Haw. Nov. 18, 2021).  He has not done so on
the present record, although the court does not rule out the
possibility of his doing so in the future.

First, while there is no dispute that Merkel's mother
is very sick, the record does not reflect the extent of her need
for a caregiver at this time or through October 2023, when Merkel
is scheduled to be released from FDC Honolulu.  In other words,
the mother's medical records, by themselves, do not tell this
court how incapacitated the mother is or will be.  The record
does establish that, since Merkel's stepfather's passing,
Merkel's partner, Medeiros, has been heroically providing care
for his mother.  Medeiros is sometimes working away from the
home.  This means that the mother is being left alone for certain
periods.  The motion also notes that before the stepfather's
passing, "he could only do small chores around the house" and be

home to call for help.  *See* ECF No. 139, PageID # 458.  The court gathers from these statements that, when the stepfather was alive, he may have provided little or no actual caregiving.  The record could be read as establishing, for example, that the mother can take herself to the bathroom while Medeiros is at work.  Nor does the current record indicate enough about the mother's condition to establish that it is necessary for Medeiros to take off from work to personally drive the mother to appointments (as opposed to relying on any transportation service).

Second, even under the proposed amendments to the guideline policy statements, the guidelines would require not only incapacitation of a parent, but also a showing that "the defendant would be the only available caregiver for the parent." ECF No. 139-3, PageID # 476.  This is consistent with some case law on the issue, although courts, in the absence of clarifying guideline amendments, have been split on the issue.  *See United States v. Capetillo-Davila*, 2023 WL 2599612, at *4 (D. Haw. Mar. 22, 2023) (determining that extraordinary and compelling reasons justifying compassionate release were lacking when there was no evidence that a sibling could not provide care for parents for whom there were only "vague generalizations as to [the] parent's conditions"); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (finding an extraordinary and compelling

circumstance justifying compassionate release when a parent was "incredibly unwell" and the defendant was the only available caregiver due to incompetence/neglect of the parent's aides and a sibling's inability or aversion to helping the parent); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (holding that being the only available caregiver for an ailing parent was an extraordinary and compelling reason warranting compassionate release); *but see United States v. Goldberg*, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason' for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (noting the need to care for a 93-year-old mother in hospice was not an extraordinary and compelling reason for compassionate release as "many, if not all inmates, have aging and sick parents").

The motion fails to establish that Merkel is a necessary caregiver.  Merkel does not sufficiently show that no one else can or will do more to fill any void in the mother's care.  Merkel has a sister who lives in Oregon and a brother who lives in Washington.  There is no explanation as to whether they might be willing to contribute time, money, or other resources to her care.  Merkel also has another brother on Kauai, who has his

own family and job.  The brother lives 30 to 45 minutes away from
the mother.  The only details provided about whether the mother
could move in with that brother are references to steps and
space.  The court has no express statement about the mother's
mobility.  Nor does the record address whether anyone else in the
Kauai bother's household (e.g., a spouse or a teenager with a
driver's license) could help by driving the mother to
appointments.

        The court also notes that Merkel does not offer a
detailed plan he would follow if released at this time.  Would he
be able to work?  If he goes to work at the same time as
Medeiros, the mother would continue to be left alone.  Is there
more than one car for the family to use?  If not, and if Merkel
or Medeiros took the single car to work, how would that improve
the mother's transportation to appointments?  Is Merkel
projecting sufficient income to cover paying for transportation?
What added expenses would the family have if Merkel were
released?

        On the present record, Merkel fails to establish
extraordinary and compelling reasons for compassionate release.

> ### D.   Section 3553(a) Factors Do Not Support
> ###      Compassionate Release.

        In evaluating whether early release is justified, this
court also considers the factors set forth in § 3553(a).  This
court determines that those factors do not favor a reduction in

Merkel's sentence.

When balancing the § 3553(a) factors, the Ninth Circuit requires this court to

> use the *fullest information possible* concerning subsequent developments in the law, such as changes in sentencing guidelines, legislative changes to a mandatory minimum, and changes to a triggering predicate offense to ensure the punishment will fit the crime and critically, to ensure that the sentence imposed is also sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the public.

*United States v. Lizarraras-Chacon*, 14 F.4th 961, 967 (9th Cir. 2021) (quotation marks, alterations, and citation omitted).

Merkel was certainly involved with a serious drug offense. But he served his original term of imprisonment and is now serving the remainder of a 7-month sentence for violating the terms of his supervised release. While serving 2 of 7 months of imprisonment might offer some deterrent to violations of the conditions of supervised release, Merkel has not shown that the small fraction of the current sentence served to date is a sufficient response to his repeated failures to comply with the terms of his supervised release. This court might view the time Merkel has served on his present sentence differently if presented with a more compelling case for his release. But Merkel fails to present such a case.

14

Merkel does have a criminal history, which his placement in Criminal History Category II takes into account. Similarly, the amount of methamphetamine Merkel was responsible for has been taken into account in determining his offense level. The court notes that, aside from his drug use and failure to take drug tests, Merkel's crime involved conduct occurring fifteen years ago and is thus dated. His crime did not involve violence or threats of violence, making this court less concerned about any potential threat to public safety. There is no evidence in the record indicating that Merkel has had any recent disciplinary issues while incarcerated or reflecting his attempts to rehabilitate himself while imprisoned.

While Merkel's release plan involves living with Medeiros and his mother, that plan does not include drug treatment. Merkel's repeated drug use resulted in his supervised release being revoked. Under 18 U.S.C. § 3582(c)(1)(A), the maximum supervised release period this court could impose if it ordered compassionate release would be the length of the imprisonment term that was cut short. When this court revoked Merkel's release status and imposed no further supervised release, that was a reflection of this court's concern that Merkel was not amenable to supervision. It is thus not at all clear that a short supervision period would yield a good result.

15

Balancing the factors set forth in § 3553(a), the court determines that those factors do not support Merkel's compassionate release on the present record.

**III.     CONCLUSION.**

Merkel's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied without prejudice to the filing of another motion based on a more thorough record.

Merkel may consider asking the Bureau of Prisons to be furloughed pursuant to 18 U.S.C. § 3622.  This court is not suggesting that such a furlough request should be granted and is certainly not saying what any such furlough might look like.  The court is only noting that § 3622 might provide an avenue of relief for Merkel.  *See* New Note 1 to Section 1B1.13, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, page 6 of 73 ("A reduction of a defendant's term of imprisonment under this policy statement is not appropriate when releasing the defendant under 18 U.S.C. § 3622 for a limited time adequately addresses the defendant's circumstances.") (effective November 1, 2023).

16

It is so ordered.

DATED: Honolulu, Hawaii, May 19, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Merkel*, Cr. No. 08-00160 SOM (02); ORDER DENYING DEFENDANT
STUART MERKEL'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE